**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**

|  |  |
|---|---|
| **IN RE: ACTOS (PIOGLITAZONE) PRODUCTS LIABILITY LITIGATION** | **MDL No.: 6:11md-2299** |
| | **JUDGE DOHERTY** |
| THOMAS QUINN, NATHAN GREEN, JOSEPH MOSLEY, and JULIA PERREAULT, Individually and on behalf of the Estate of EDWARD PERREAULT, | MAGISTRATE JUDGE HANNA |
| | Civil Action No.: 1:14-cv-01118 |
| Plaintiffs, | |
| -against- | |
| TAKEDA PHARMACEUTICALS USA, INC. (f/k/a TAKEDA PHARMACEUTICALS NORTH AMERICA, INC.); TAKEDA PHARMACEUTICAL COMPANY LIMITED; TAKEDA PHARMACEUTICALS LLC.; TAKEDA PHARMACEUTICALS INTERNATIONAL INC.; TAKEDA DEVELOPMENT CENTER AMERICAS, INC. (f/k/a TAKEDA GLOBAL RESEARCH & DEVELOPMENT CENTER INC.); TAKEDA CALIFORNIA INC. (f/k/a TAKEDA SAN DIEGO INC.); and ELI LILLY AND COMPANY, | **COMPLAINT** **FOR JURY TRIAL** |
| Defendants. | |

Plaintiffs, by their attorneys, **DOUGLAS & LONDON, P.C.** on behalf of themselves individually, upon information and belief, at all times hereinafter mentioned, alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy as to the Plaintiffs exceeds $75,000.00, exclusive of interest and costs, and because Defendants are incorporated and have their principal places of business in states other than the state in which the named Plaintiffs reside.

2.    Venue of this case is appropriate in the United States District Court, Western District of Louisiana. Plaintiffs state that but for the Order permitting direct filing into the Western District of Louisiana pursuant to the Case Management Order dated April 9, 2012, Plaintiffs would have filed in the District Court encompassing each Plaintiff' residence.   Therefore, Plaintiffs reserve their rights to respectfully request that, at the time of trial, this case be transferred to the above referenced District Court.

## NATURE OF THE CASE

3.    This action is brought on behalf of each of the above captioned Plaintiffs, (hereinafter referred to as "Plaintiffs") who used Actos also known as pioglitazone hydrochloride for treatment of Type 2 Diabetes Mellitus.

4.    Defendants, TAKEDA PHARMACEUTICALS USA, INC. (fka TAKEDA NORTH AMERICA   INC.),   TAKEDA   PHARMACEUTICAL   COMPANY   LIMITED,   TAKEDA PHARMACEUTICALS LLC., TAKEDA PHARMACEUTICALS INTERNATIONAL INC., TAKEDA DEVELOPMENT   CENTER   AMERICAS,   INC.   (f/k/a   TAKEDA   GLOBAL   RESEARCH   & DEVELOPMENT CENTER INC.), TAKEDA CALIFORNIA INC. (fka TAKEDA SAN DIEGO INC.) (hereinafter collectively referred to as "TAKEDA") and ELI LILLY AND COMPANY (hereinafter referred to as "LILLY" and collectively with TAKEDA referred to as "Defendants") designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Actos.   When warning of safety and risks of Actos, Defendants negligently and/or fraudulently represented to the medical and healthcare community, the Food and Drug Administration (hereinafter referred to as "FDA"), to Plaintiffs and the public in general, that Actos had been tested and was found to be safe and/or effective for its indicated use.

5.    Defendants concealed their knowledge of Actos's defects, from Plaintiffs, the Food and Drug Administration, the public in general and/or the medical community specifically.

6.      These representations were made by Defendants with the intent of defrauding and deceiving Plaintiffs, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical community in particular, to recommend, dispense and/or purchase Actos for use as treatment of Type 2 Diabetes Mellitus, all of which evinced a callous, reckless, willful, depraved indifference to health, safety and welfare of the Plaintiffs herein.

7.      Defendants negligently and improperly failed to perform sufficient tests, if any, on humans using Actos during clinical trials, forcing Plaintiff, and Plaintiffs' physicians, hospitals, and/or the FDA, to rely on safety information that applies to other Type 2 Diabetes Mellitus treatment, which does not entirely and/or necessarily apply to Actos whatsoever.

8.      As a result of the foregoing acts and omissions, the Plaintiffs was and still is caused to suffer serious and dangerous side effects including inter alia bladder cancer, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences. Plaintiffs herein has sustained certain of the above health consequences due to Plaintiffs' use of Actos.

9.      Defendants concealed their knowledge of the defects in their products from the Plaintiff, and Plaintiffs' physicians, hospitals, pharmacists, the FDA, and the public in general.

10.      Consequently, Plaintiffs seeks compensatory damages as a result of Plaintiffs' use of the Actos, which has caused Plaintiffs to suffer from bladder cancer, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

## PARTY PLAINTIFFS

12.1    Plaintiff, THOMAS QUINN, alleges as follows:

a.  Plaintiff, THOMAS QUINN, is a citizen of the United States of America, and resident of the State of Maine.

b.  Plaintiff, THOMAS QUINN, was born on October 15, 1932.

c.  Plaintiff, THOMAS QUINN, first began using Actos in or about September 2007, and used Actos up through approximately September 2011.

d.  As result of using Defendants' Actos, Plaintiff, THOMAS QUINN, was diagnosed with bladder cancer on or about September 7, 2011, and was caused to sustain severe and permanent personal injuries, pain, suffering, and emotional distress.

e.  The injuries and damages sustained by Plaintiff, THOMAS QUINN, were caused by Defendants' Actos.

12.2    Plaintiff, NATHAN GREEN, alleges as follows:

a.  Plaintiff, NATHAN GREEN, is a citizen of the United States of America, and resident of the State of South Carolina.

b.  Plaintiff, NATHAN GREEN, was born on July 18, 1938.

c.  Plaintiff, NATHAN GREEN, first began using Actos in or about January 2008, and used Actos up through approximately September 2011.

d.  As result of using Defendants' Actos, Plaintiff, NATHAN GREEN, was diagnosed with bladder cancer on or about September 19, 2011, and was caused to sustain severe and permanent personal injuries, pain, suffering, and emotional distress.

e.  The injuries and damages sustained by Plaintiff, NATHAN GREEN, were caused by Defendants' Actos.

12.3    Plaintiff, JOSEPH MOSLEY, alleges as follows:

a.  Plaintiff, JOSEPH MOSLEY, is a citizen of the United States of America, and resident of the State of Florida.

b.  Plaintiff, JOSEPH MOSLEY, was born on June 13, 1937.

c.  Plaintiff, JOSEPH MOSLEY, first began using Actos in or about April 2000, and used Actos up through approximately December 2008.

d.  As result of using Defendants' Actos, Plaintiff, JOSEPH MOSLEY, was diagnosed with bladder cancer on or about September 21, 2010, and was caused to sustain severe and permanent personal injuries, pain, suffering, and emotional distress.

    e.   The injuries and damages sustained by Plaintiff, JOSEPH MOSLEY, were caused by Defendants' Actos.

12.4   Plaintiff, JULIA PERREAULT, on behalf of the estate of EDWARD PERREAULT ("Plaintiff-decedent") and JULIA PERREAULT, individually, alleges as follows:

    a.   Plaintiff, JULIA PERREAULT, is a citizen of the United States of America, and resident of the State of Massachusetts.

    b.   Plaintiff, JULIA PERREAULT, is the legal administrator of the estate of Plaintiff-decedent, EDWARD PERREAULT.

    c.   Plaintiff-decedent, EDWARD PERREAULT, was born on Octber 15, 1932.

    d.   Plaintiff-decedent, EDWARD PERREAULT, first began using Actos in or about 2006, and used Actos up through approximately September 2011.

    e.   As result of using Defendants' Actos, Plaintiff-decedent, EDWARD PERREAULT, was diagnosed with bladder cancer in or about September 2011, and as a result, died on August 13, 2012.

    f.   The injuries and damages sustained by Plaintiff-decedent, EDWARD PERREAULT, were caused by Defendants' Actos.

    g.   Plaintiff, GLORIA JULIA PERREAULT's, loss of consortium claims are alleged in the Ninth Cause of Action.

    h.   Plaintiff-decedent, EDWARD PERREAULT'S, wrongful death claims are alleged in the Tenth Cause of Action.

### PARTY DEFENDANTS

13.   Upon information and belief, Defendant TAKEDA PHARMACEUTICALS USA INC. is a Delaware corporation, having a principal place of business at One Takeda Parkway, Deerfield, Illinois 60015. As part of its business, TAKEDA PHARMACEUTICALS USA INC. is involved in the research, development, sales and marketing of pharmaceutical products including Actos and pioglitazone hydrochloride.

14. Upon information and belief, Defendant, TAKEDA PHARMACEUTICALS USA INC., has transacted and conducted business in the State of Louisiana and the State of each Plaintiff' state of residence.

15. Upon information and belief, Defendant, TAKEDA PHARMACEUTICALS USA INC., has derived substantial revenue from goods and products used in the State of Louisiana and the State of each Plaintiff' state of residence.

16. Upon information and belief, Defendant, TAKEDA PHARMACEUTICALS USA INC., expected or should have expected its acts to have consequence within Louisiana and each Plaintiff' state of residence, and derived substantial revenue from interstate commerce within the United States, Louisiana and the State of each Plaintiff' state of residence, more particularly.

17. Upon information and belief, and at all relevant times, Defendant, TAKEDA PHARMACEUTICALS USA INC., was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute the drug Actos for use which primary purpose is treatment of Type 2 Diabetes Mellitus.

18. Upon information and belief, Defendant TAKEDA PHARMACEUTICAL COMPANY LIMITED is a Japanese corporation having a principal place of business at 1-1, Doshomachi 4-chome, Chuoku, Osaka, Japan and is the parent/holding company of Defendants TAKEDA PHARMACEUTICALS INTERNATIONAL INC., TAKEDA PHARMACEUTICALS USA, INC., TAKEDA PHARMACEUTICALS LLC., TAKEDA DEVELOPMENT CENTER AMERICAS, INC. (f/k/a TAKEDA GLOBAL RESEARCH & DEVELOPMENT CENTER INC.), and TAKEDA CALIFORNIA INC.

19. Upon information and belief, and at all relevant times, Defendant TAKEDA PHARMACEUTICAL COMPANY LIMITED exercised and exercises dominion and control over Defendants TAKEDA PHARMACEUTICALS INC., TAKEDA PHARMACEUTICALS USA INC.,

TAKEDA PHARMACEUTICALS LLC., TAKEDA DEVELOPMENT CENTER AMERICAS, INC. (f/k/a TAKEDA GLOBAL RESEARCH & DEVELOPMENT CENTER INC.), and TAKEDA CALIFORNIA INC.

20. Upon information and belief, Defendant, TAKEDA PHARMACEUTICAL COMPANY LIMITED, has transacted and conducted business in the State of Louisiana and the State of each Plaintiff' state of residence.

21. Upon information and belief, Defendant, TAKEDA PHARMACEUTICAL COMPANY LIMITED, has derived substantial revenue from goods and products used in the State of Louisiana and the State of each Plaintiff' state of residence.

22. Upon information and belief, Defendant, TAKEDA PHARMACEUTICAL COMPANY LIMITED, expected or should have expected its acts to have consequence within the United States of America, the State of Louisiana and the State of each Plaintiff' state of residence, and derived substantial revenue from interstate commerce within the United States of America, Louisiana and each Plaintiff' state of residence, more particularly.

23. Upon information and belief, and at all relevant times, Defendant, TAKEDA PHARMACEUTICAL COMPANY LIMITED, was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute the drug Actos for use which primary purpose is treatment of Type 2 Diabetes Mellitus.

24. Upon information and belief, Defendant TAKEDA PHARMACEUTICALS LLC. is a Delaware limited liability company, having a principal place of business at One Takeda Parkway, Deerfield, Illinois 60015.

25. Upon information and belief, Defendant, TAKEDA PHARMACEUTICALS LLC., has transacted and conducted business in the State of Louisiana and the State of each Plaintiff' state of residence.

26. Upon information and belief, Defendant, TAKEDA PHARMACEUTICALS LLC., has derived substantial revenue from goods and products used in the State of Louisiana and the State of each Plaintiff' state of residence.

27. Upon information and belief, Defendant, TAKEDA PHARMACEUTICALS LLC., expected or should have expected its acts to have consequence within Louisiana and each Plaintiff' state of residence, and derived substantial revenue from interstate commerce within the United States, Louisiana and each Plaintiff' state of residence, more particularly.

28. Upon information and belief, and at all relevant times, Defendant, TAKEDA PHARMACEUTICALS LLC., was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute the drug Actos for use which primary purpose is treatment of Type 2 Diabetes Mellitus.

29. Upon information and belief, Defendant TAKEDA PHARMACEUTICALS INTERNATIONAL INC. is an Illinois corporation, having a principal place of business at One Takeda Parkway, Deerfield, IL 60015.

30. Upon information and belief, Defendant TAKEDA DEVELOPMENT CENTER AMERICAS, INC. (f/k/a TAKEDA GLOBAL RESEARCH & DEVELOPMENT CENTER INC.) is an Illinois corporation, having a principal place of business at One Takeda Parkway, Deerfield, IL 60015. As part of its business TAKEDA DEVELOPMENT CENTER AMERICAS, INC. is involved in the research, development, sales and marketing of pharmaceutical products including Actos and pioglitazone hydrochloride.

31. Upon information and belief, Defendant, TAKEDA DEVELOPMENT CENTER AMERICAS, INC., has transacted and conducted business in the State of Louisiana and each Plaintiff' state of residence.

32.   Upon information and belief, Defendant, TAKEDA DEVELOPMENT CENTER AMERICAS, INC., has derived substantial revenue from goods and products used in the State of Louisiana and each Plaintiff' state of residence.

33.   Upon information and belief, Defendant, TAKEDA DEVELOPMENT CENTER AMERICAS, INC., expected or should have expected its acts to have consequence within Louisiana and each Plaintiff' state of residence, and derived substantial revenue from interstate commerce within the United States, Louisiana and each Plaintiff' state of residence, more particularly.

34.   Upon information and belief, and at all relevant times, Defendant, TAKEDA DEVELOPMENT CENTER AMERICAS, INC., was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute the drug Actos for use which primary purpose is treatment of Type 2 Diabetes Mellitus.

35.   Upon information and belief, Defendant TAKEDA CALIFORNIA INC. is a California corporation, having a principal place of business at 10410 Science Center Drive, San Diego, CA 92121.

36.   Upon information and belief, Defendant, TAKEDA CALIFORNIA INC., has transacted and conducted business in the State of Louisiana and each Plaintiff' state of residence.

37.   Upon information and belief, Defendant, TAKEDA CALIFORNIA INC., has derived substantial revenue from goods and products used in the State of Louisiana and each Plaintiff' state of residence.

38.   Upon information and belief, Defendant, TAKEDA CALIFORNIA INC., expected or should have expected its acts to have consequence within Louisiana and each Plaintiff' state of residence, and derived substantial revenue from interstate commerce within the United States, Louisiana and each Plaintiff' state of residence, more particularly.

39.   Upon information and belief, and at all relevant times, Defendant, TAKEDA CALIFORNIA INC., was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute the drug Actos for use which primary purpose is treatment of Type 2 Diabetes Mellitus.

40.   Upon information and belief, Defendant, ELI LILLY AND COMPANY is an Indiana corporation with its principal place of business located at Lilly Corporate Center, Indianapolis, Indiana 46285.

41.   Upon information and belief, Defendant, ELI LILLY AND COMPANY, has transacted and conducted business in the State of Louisiana and each Plaintiff' state of residence.

42.   Upon information and belief, Defendant, ELI LILLY AND COMPANY, has derived substantial revenue from goods and products used in the State of Louisiana and each Plaintiff' state of residence.

43.   Upon information and belief, Defendant, ELI LILLY AND COMPANY, expected or should have expected its acts to have consequence within Louisiana and each Plaintiff' state of residence, and derived substantial revenue from interstate commerce within the United States, Louisiana and each Plaintiff' state of residence, more particularly.

44.   Upon information and belief, and at all relevant times, Defendant, ELI LILLY AND COMPANY, was in the business of and did research, manufacture, test, advertise, promote, market, sell, and distribute the drug Actos for use which primary purpose is treatment of Type 2 Diabetes Mellitus.

## FACTUAL BACKGROUND

45.   At all relevant times, Defendants were in the business of and did design, research, manufacture, test, advertise, promote, market, sell and distribute Actos and pioglitazone hydrochloride for treatment of Type 2 Diabetes Mellitus.

46.   TAKEDA received FDA approval for Actos, also known as pioglitazone hydrochloride, on July 15, 1999 for treatment of Type 2 Diabetes Mellitus.

47.   TAKEDA and LILLY jointly launched Actos in the United States in 1999.

48.   On April 20, 2006, TAKEDA announced the conclusion of its collaboration in the United States between TAKEDA and LILLY to promote and market Actos. TAKEDA described this partnership as a "great success" and "mutually beneficial to both companies."

49.   Actos is in a class of insulin-sensitizing diabetes agents known as thiazolidinediones ("TZDs") and is available by prescription in oral tablets doses of 15mg, 30mg and 45mg.

50.   Actos exerts its antihyperglycemic effect only in the presence of endogenous insulin. Therefore, Actos is only used to treat Type 2 diabetes and should not be used to treat Type 1 diabetes.

51.   Actos is also sold in combination with metformin, marketed as Actoplus Met, Actoplus Met XR, and in combination with glimepiride, marketed as Duetact.

52.   In 2005, the results of the PROactive (PROspective PioglitAzone Clinical Trial In MacroVascular Events) three-year study were published. PROactive prospectively looked at the impact in total mortality and macrovascular morbidity using Actos.  Dormandy J.A., et al. *Secondary Prevention of Macrovascular Events in Patients with Type 2 Diabetes in the PROactive Study (PROspective PioglitAzone Clinical Trial In MacroVascular Events): a Randomised Controlled Trial*, Lancet, 266:1279-1286 (2005) (the "Dormandy paper").

53.   During the course of monitoring the study, the researchers and Defendants became aware that there was a statistically significant demonstrated higher percentage of bladder cancer cases in patients receiving Actos versus comparators' treatments/medications.

54.   Neither during the study, nor in the actual final Dormandy paper, did the researchers or the Defendants publish these statistically significant increases of bladder cancer.

55.   This information was not included in the published Dormandy paper.

56. Defendants willfully, wantonly and with malice withheld the knowledge of increased risk of cancer in users of Actos to prevent any chances of its products' registrations being delayed or rejected by FDA.

57. In April 2011, a paper entitled *Risk of Bladder Cancer Among Diabetic Patients Treated with Pioglitazone* was published in Diabetes Care detailing a longitudinal cohort study conducted by Kaiser Permanente Northern California, which reported an increased incidence of bladder cancer in patients who used pioglitazone for more than two years. This study looked at adverse events reports made to the FDA between 2004 and 2009. The conclusion of that study was that "[i]n agreement with preclinical and clinical studies, AERS analysis is consistent with an association between pioglitazone and bladder cancer. This issue needs constant epidemiologic surveillance and urgent definition by more specific studies."

58. On June 7, 2011, the Caisse nationale de l'assurance maladie, at the request of the French regulatory agency, published a report concluding that there is a statistically significant association between exposure to pioglitazone (Actos) and bladder cancer and that the risk increased with exposure longer than one year.

59. On June 9, 2011, the European Medicine Agency ("EMA") suspended the prescription of Actos in light of the French Marketing Authorization Committee and the French National Pharmacovigilence Committee's findings regarding the increased risk of bladder cancer.

60. On June 10, 2011, Germany's Federal Institute for Drugs and Medical Devices recommended that physicians not prescribe Actos to new patients until more testing could be performed and more studies reviewed.

61. On June 15, 2011, the FDA issued a Safety Communication to inform the public that use of Actos for more than one year may be associated with an increased risk of bladder cancer. The FDA

further recommended that patients with a prior or current medical history of bladder cancer discontinue use of Actos.

62.   On June 17, 2011, Health Canada issued a press release informing healthcare providers and Canadians that in light of the studies suggesting an increased risk of bladder cancer with the diabetes drug pioglitazone, as well as actions taken by other regulatory agencies, Health Canada would be undertaking a review of the drug's status.

63.   On July 21, 2011, the EMA's Committee for Medicinal Products for Human Use ("CHMP") issued a report concluding that the evidence from different sources shows a risk of bladder cancer with pioglitazone, particularly in patients treated for the longest periods and at the highest does. The CHMP further recommended that patients who have or have had bladder cancer be taken off pioglitazone and prescribers should closely monitor patients newly or currently on pioglitazone and discontinue use for those who are not deriving substantial benefit from the medication.

64.   On August 4, 2011, the FDA announced approval for an updated label to include information regarding the risk of bladder cancer in the Warnings and Precautions sections as well as the patient Medication Guide.

65.   Prior to applying for and obtaining approval of Actos, Defendants knew or should have known that human consumption of Actos was associated with and/or would cause the induction of bladder cancer and Defendants possessed pre-clinical scientific studies including animal evidence, which evidence Defendants knew or should have known was a signal that bladder cancer risk needed further testing and studies prior to its introduction to the market.

66.   Upon information and belief, despite bladder cancer findings in animal model carcinogenicity studies and other pre-clinical evidence, Defendants failed to adequately conduct complete and proper testing of Actos prior to filing their New Drug Application for Actos.

67.    Upon information and belief, additional bladder cancer evidence from human clinical trials also became known to Defendants in the early 2000's.

68.    Upon information and belief, from the date Defendants received FDA approval to market Actos, Defendants made, distributed, marketed and sold Actos without adequate warning to Plaintiffs' prescribing physicians or Plaintiffs that Actos was associated with and/or could cause bladder cancer, presented a risk of bladder cancer in patients who used it, and that Defendants had not adequately conducted complete and proper testing and studies of Actos with regard to carcinogenicity, specifically bladder cancer.

69.    Upon information and belief, for over a decade and up to present, Defendants concealed and failed to completely disclose its knowledge that Actos was associated with or could cause bladder cancer as well as its knowledge that they had failed to fully test or study said risk.

70.    Upon information and belief, Defendants ignored the association between the use of Actos and the risk of developing bladder cancer.

71.    Defendants' failure to disclose information that they possessed regarding the failure to adequately test and study Actos for bladder cancer risk further rendered warnings for this medication inadequate.

72.    By reason of the foregoing acts and omissions, the Plaintiffs were and still is caused to suffer from bladder cancer, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

73.    Plaintiffs have endured and continues to suffer the mental anguish and psychological trauma of living with the knowledge that Plaintiffs has suffered serious and dangerous side effects including, inter alia bladder cancer, as well as other severe and personal injuries which are permanent and lasting in

nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of redeveloping cancer.

74.    By reason of the foregoing, Plaintiffs have been severely and permanently injured, and will require more constant and continuous medical monitoring and treatment than prior to Plaintiffs' use of Defendants' Actos drug.

**FIRST CAUSE OF ACTION**
**AS AGAINST THE DEFENDANTS**
**(NEGLIGENCE)**

75.    Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

76.    Defendants had a duty to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale and/or distribution of Actos into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous side effects.

77.    Defendants failed to exercise ordinary care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of Actos into interstate commerce in that Defendants knew or should have known that using Actos created a high risk of unreasonable, dangerous side effects, including, bladder cancer, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of redeveloping cancer.

78.    The negligence of the Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

   (a) Manufacturing, producing, promoting, formulating, creating,

and/or designing Actos without thoroughly testing it;

(b)     Manufacturing, producing, promoting, formulating, creating, and/or designing Actos without adequately testing it;

(c)     Not conducting sufficient testing programs to determine whether or not Actos was safe for use; in that Defendants herein knew or should have known that Actos was unsafe and unfit for use by reason of the dangers to its users;

(d)     Selling Actos without making proper and sufficient tests to determine the dangers to its users;

(e)     Negligently failing to adequately and correctly warn the Plaintiff, the public, the medical and healthcare profession, and the FDA of the dangers of Actos;

(f)     Failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with, and more particularly, use, Actos;

(g)     Failing to test Actos and/or failing to adequately, sufficiently and properly test Actos.

(h)     Negligently advertising and recommending the use of Actos without sufficient knowledge as to its dangerous propensities;

(i)     Negligently representing that Actos was safe for use for its intended purpose, when, in fact, it was unsafe;

(j)     Negligently representing that Actos had equivalent safety and efficacy as other forms of Type 2 Diabetes Mellitus treatment;

(k)     Negligently designing Actos in a manner which was dangerous to its users;

(l)     Negligently manufacturing Actos in a manner which was dangerous to its users;

(m)     Negligently producing Actos in a manner which was dangerous to its users;

(n)     Negligently assembling Actos in a manner which was dangerous to its users;

(o)     Concealing information concerning FDA warnings from the Plaintiffs in knowing that Actos was unsafe, dangerous, and/or non-conforming with FDA regulations;

(p)  Improperly concealing and/or misrepresenting information from the Plaintiff, healthcare professionals, and/or the FDA, concerning the severity of risks and dangers of Actos compared to other forms of Type 2 Diabetes Mellitus treatment.

79.  Defendants under-reported, underestimated and downplayed the serious dangers of Actos.

80.  Defendants negligently compared the safety risk and/or dangers of Actos with other forms of Type 2 Diabetes Mellitus treatment.

81.  Defendants were negligent in the designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing and sale of Actos in that they:

(a)  Failed to use due care in designing and manufacturing Actos so as to avoid the aforementioned risks to individuals when Actos was used for treatment Type 2 Diabetes Mellitus treatment;

(b)  Failed to accompany their product with proper and/or accurate warnings regarding all possible adverse side effects associated with the use of Actos;

(c)  Failed to accompany their product with proper warnings regarding all possible adverse side effects concerning the failure and/or malfunction of Actos;

(d)  Failed to accompany their product with accurate warnings regarding the risks of all possible adverse side effects concerning Actos;

(e)  Failed to warn Plaintiffs of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity of the side effects;

(f)  Failed to conduct adequate testing, including pre-clinical and clinical testing and post-marketing surveillance to determine the safety of Actos;

(g)  Failed to warn Plaintiff, prior to actively encouraging the sale of Actos, either directly or indirectly, orally or in writing, about the need for more comprehensive, more regular medical monitoring than usual to ensure early discovery of potentially serious side effects;

(h)  Were otherwise careless and/or negligent.

82.    Despite the fact that Defendants knew or should have known that Actos caused unreasonably dangerous side effects, Defendants continued and continue to market, manufacture, distribute and/or sell Actos to consumers, including the Plaintiffs.

83.    Defendants knew or should have known that consumers such as the Plaintiffs would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care, as set forth above.

84.    Defendants' negligence was the proximate cause of Plaintiffs' injuries, harm and economic loss which Plaintiffs suffered and/or will continue to suffer.

85.    As a result of the foregoing acts and omissions, the Plaintiffs were caused to suffer serious and dangerous side effects including, bladder cancer, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of redeveloping cancer.

86.    As a result of the foregoing acts and omissions the Plaintiffs require and/or will require more health care and services and did incur medical, health, incidental and related expenses.  Plaintiffs are informed and believe and further allege that Plaintiffs will in the future be required to obtain further medical and/or hospital care, attention, and services.

87.    By reason of the foregoing, each Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

**SECOND CAUSE OF ACTION**
**AS AGAINST THE DEFENDANTS**
**(STRICT PRODUCTS LIABILITY)**

88.    Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

89.   At all times herein mentioned, the Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, distributed, and/or have recently acquired the Defendants who have designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed Actos as hereinabove described that was used by the Plaintiff.

90.   That Actos was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by the Defendants.

91.   At those times, Actos was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, and in particular, the Plaintiffs herein.

92.   The Actos, designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation of Actos.

93.   The Actos, designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective in design and/or formulation, in that, when it left the hands of the Defendants manufacturers and/or suppliers, it was unreasonably dangerous, and it was more dangerous than an ordinary consumer would expect.

94.   At all times herein mentioned, Actos was in a defective condition and unsafe, and Defendants knew or had reason to know that said product was defective and unsafe, especially when used in the form and manner as provided by the Defendants.

95.   Defendants knew, or should have known that at all times herein mentioned its Actos was in a defective condition, and was and is inherently dangerous and unsafe.

96.   At the time of the Plaintiffs' use of Actos, Actos was being used for the purposes and in a manner normally intended, namely for treatment of Type 2 Diabetes Mellitus.

97.    Defendants with this knowledge voluntarily designed its Actos in a dangerous condition for use by the public, and in particular the Plaintiff.

98.    Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

99.    Defendants created a product unreasonably dangerous for its normal, intended use.

100.    The Actos, designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was manufactured defectively in that Actos left the hands of Defendants in a defective condition and was unreasonably dangerous to its intended users.

101.    The Actos designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants reached their intended users in the same defective and unreasonably dangerous condition in which the Defendants' Actos was manufactured.

102.    Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed a defective product which created an unreasonable risk to the health of consumers and to the Plaintiffs in particular, and Defendants are therefore strictly liable for the injuries sustained by the Plaintiff.

103.    The Plaintiffs could not by the exercise of reasonable care, have discovered Actos's defects herein mentioned and perceived its danger.

104.    The Actos, designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective due to inadequate warnings or instructions as the Defendants knew or should have known that the product created a risk of serious and dangerous side effects including, bladder cancer, as well as other severe and personal injuries which are permanent and lasting in nature and the Defendants failed to adequately warn of said risk.

105.    The Actos, designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective due to inadequate warnings and/or inadequate testing.

106. The Actos, designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects including, bladder cancer, as well as other severe and permanent health consequences from Actos, they failed to provide adequate warnings to users or consumers of the product, and continued to improperly advertise, market and/or promote their product, Actos.

107. By reason of the foregoing, the Defendants have become strictly liable in tort to the Plaintiffs for the manufacturing, marketing, promoting, distribution, and selling of a defective product, Actos.

108. Defendants' defective design, manufacturing defect, and inadequate warnings of Actos were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

109. That said defects in Defendants' drug Actos were a substantial factor in causing Plaintiffs' injuries.

110. As a result of the foregoing acts and omissions, the Plaintiffs were caused to suffer serious and dangerous side effects including, bladder cancer, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of redeveloping cancer.

111. As a result of the foregoing acts and omissions the Plaintiffs require and/or will require more health care and services and did incur medical, health, incidental and related expenses.  Plaintiffs are informed and believe and further allege that Plaintiffs will in the future be required to obtain further medical and/or hospital care, attention, and services.

112. By reason of the foregoing, each Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## THIRD CAUSE OF ACTION
## AS AGAINST THE DEFENDANTS
## (BREACH OF EXPRESS WARRANTY)

113.  Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

114.  Defendants expressly warranted that Actos was safe and well accepted by users.

115.  Actos does not conform to these express representations because Actos is not safe and has numerous serious side effects, many of which were not accurately warned about by Defendants.  As a direct and proximate result of the breach of said warranties, Plaintiffs suffered and/or will continue to suffer severe and permanent personal injuries, harm and economic loss.

116.  Plaintiffs did rely on the express warranties of the Defendants herein.

117. Members of the medical community, including physicians and other healthcare professionals, relied upon the representations and warranties of the Defendants for use of Actos in recommending, prescribing, and/or dispensing Actos.

118.  The Defendants herein breached the aforesaid express warranties, as their drug Actos was defective.

119.  Defendants expressly represented to Plaintiffs, their physicians, healthcare providers, and/or the FDA that Actos was safe and fit for use for the purposes intended, that it was of merchantable quality, that it did not produce any dangerous side effects in excess of those risks associated with other forms of Type 2 Diabetes Mellitus Treatment, that the side effects it did produce were accurately reflected in the warnings and that it was adequately tested and fit for its intended use.

120. Defendants knew or should have known that, in fact, said representations and warranties were false, misleading and untrue in that Actos was not safe and fit for the use intended, and, in fact, produced serious injuries to the users that were not accurately identified and represented by Defendants.

121. As a result of the foregoing acts and omissions, the Plaintiffs were caused to suffer serious and dangerous side effects including, bladder cancer, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of redeveloping cancer.

122. As a result of the foregoing acts and omissions the Plaintiffs require and/or will require more health care and services and did incur medical, health, incidental and related expenses.  Plaintiffs are informed and believe and further allege that Plaintiffs will in the future be required to obtain further medical and/or hospital care, attention, and services.

123. By reason of the foregoing, each Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

**FOURTH CAUSE OF ACTION
AS AGAINST THE DEFENDANTS
(BREACH OF IMPLIED WARRANTIES)**

124. Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

125. At all times herein mentioned, the Defendants manufactured, compounded,  portrayed, distributed, recommended, merchandized, advertised, promoted and sold Actos and/or have recently acquired the Defendants who have manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted and sold Actos, as treatment for Type 2 Diabetes Mellitus.

126. At the time Defendants marketed, sold, and distributed Actos for use by Plaintiffs, Defendants knew of the use for which Actos was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

127. The Defendants impliedly represented and warranted to the users of Actos and their physicians, healthcare providers, and/or the FDA that Actos was safe and of merchantable quality and fit for the ordinary purpose for which said product was to be used.

128. That said representations and warranties aforementioned were false, misleading, and inaccurate in that Actos was unsafe, unreasonably dangerous, improper, not of merchantable quality, and defective.

129. Plaintiffs, and/or members of the medical community and/or healthcare professionals did rely on said implied warranty of merchantability of fitness for a particular use and purpose.

130. Plaintiffs and Plaintiffs' physicians and healthcare professionals reasonably relied upon the skill and judgment of Defendants as to whether Actos was of merchantable quality and safe and fit for its intended use.

131. Actos was injected into the stream of commerce by the Defendants in a defective, unsafe, and inherently dangerous condition and the products and materials were expected to and did reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

132. The Defendants herein breached the aforesaid implied warranties, as their drug Actos was not fit for its intended purposes and uses.

133. As a result of the foregoing acts and omissions, the Plaintiffs were caused to suffer serious and dangerous side effects including, bladder cancer, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of redeveloping cancer.

134. As a result of the foregoing acts and omissions the Plaintiffs require and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiffs are

informed and believe and further allege that Plaintiffs will in the future be required to obtain further medical and/or hospital care, attention, and services.

135.  By reason of the foregoing, each Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## FIFTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS (FRAUDULENT MISREPRESENTATION)

136.  Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

137.  The Defendants falsely and fraudulently represented to the medical and healthcare community, and to the Plaintiffs, and/or the FDA, and the public in general, that said product, Actos, had been tested and was found to be safe and/or effective for treatment of Type 2 Diabetes Mellitus.

138.  That representations made by Defendants were, in fact, false.

139.  When said representations were made by Defendants, they knew those representations to be false and it willfully, wantonly and recklessly disregarded whether the representations were true.

140.  These representations were made by said Defendants with the intent of defrauding and deceiving the Plaintiff, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical and healthcare community in particular, to recommend, prescribe,  dispense and/or purchase said product, Actos, for use as treatment of Type 2 Diabetes Mellitus, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of the Plaintiffs herein.

141. At the time the aforesaid representations were made by the Defendants and, at the time the Plaintiffs used Actos, the Plaintiffs were unaware of the falsity of said representations and reasonably believed them to be true.

142. In reliance upon said representations, the Plaintiffs was induced to and did use Actos, thereby sustaining severe and permanent personal injuries, and/or being at an increased risk of sustaining severe and permanent personal injuries in the future.

143. Said Defendants knew and were aware or should have been aware that Actos had not been sufficiently tested, was defective in nature, and/or that it lacked adequate and/or sufficient warnings.

144. Defendants knew or should have known that Actos had a potential to, could, and would cause severe and grievous injury to the users of said product, and that it was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

145. Defendants brought Actos to the market, and acted fraudulently, wantonly and maliciously to the detriment of the Plaintiffs.

146. As a result of the foregoing acts and omissions, the Plaintiffs were caused to suffer serious and dangerous side effects including, bladder cancer, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of redeveloping cancer.

147. As a result of the foregoing acts and omissions the Plaintiffs require and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiffs are informed and believe and further alleges that Plaintiffs will in the future be required to obtain further medical and/or hospital care, attention, and services.

148. By reason of the foregoing, each Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

### SIXTH CAUSE OF ACTION AS
### AGAINST THE DEFENDANTS
### (FRAUDULENT CONCEALMENT)

149.  Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

150.  At all times during the course of dealing between Defendants and Plaintiff, and/or Plaintiffs' healthcare providers, and/or the FDA, Defendants misrepresented the safety of Actos for its intended use.

151.  Defendants knew or were reckless in not knowing that its representations were false.

152.  In representations to Plaintiffs, and/or Plaintiffs' healthcare providers, and/or the FDA, Defendants fraudulently concealed and intentionally omitted the following material information:

(a)  that Actos was not as safe as other forms of Type 2 Diabetes Mellitus treatment;

(b)  that the risks of adverse events with Actos were higher than those with other forms of Type 2 Diabetes Mellitus treatment;

(c)  that the risks of adverse events with Actos were not adequately tested and/or known by Defendants;

(d)  that Defendants were aware of dangers in Actos, in addition to and above and beyond those associated with other forms of Type 2 Diabetes Mellitus treatment;

(e)  that Actos was defective, and that it caused dangerous side effects, including but not limited to bladder cancer, as well as other severe and permanent health consequences, in a much more and significant rate than other forms of Type 2 Diabetes Mellitus treatment;

(f)  that patients needed to be monitored more regularly than normal while using Actos;

(g)  that Actos was manufactured negligently;

(h)  that Actos was manufactured defectively;

(i)  that Actos was manufactured improperly;

(j)     that Actos was designed negligently;

(k)     that Actos was designed defectively; and

(l)     that Actos was designed improperly.

153. Defendants were under a duty to disclose to Plaintiffs, and Plaintiffs' physicians, hospitals, healthcare providers, and/or the FDA the defective nature of Actos, including but not limited to the heightened risks of bladder cancer.

154. Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to persons who used Actos, including the Plaintiff, in particular.

155. Defendants' concealment and omissions of material facts concerning, inter alia, the safety of Actos was made purposefully, willfully, wantonly, and/or recklessly, to mislead Plaintiffs, and Plaintiffs' physicians, hospitals and healthcare providers into reliance, continued use of Actos, and actions thereon, and to cause them to purchase, prescribe, and/or dispense Actos and/or use the product.

156. Defendants knew that Plaintiffs, and Plaintiffs' physicians, hospitals, healthcare providers, and/or the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding Actos, as set forth herein.

157. Plaintiffs, as well as Plaintiffs' doctors, healthcare providers, and/or hospitals reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

158. As a result of the foregoing acts and omissions, the Plaintiffs were caused to suffer serious and dangerous side effects including, bladder cancer, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of

life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of redeveloping cancer.

159. As a result of the foregoing acts and omissions the Plaintiffs require and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiffs are informed and believe and further allege that Plaintiffs will in the future be required to obtain further medical and/or hospital care, attention, and services.

160. By reason of the foregoing, each Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## SEVENTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS (NEGLIGENT MISREPRESENTATION)

161. Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

162. Defendants had a duty to represent to the medical and healthcare community, and to the Plaintiff, the FDA and the public in general that said product, Actos, had been tested and found to be safe and effective for treatment of Type 2 Diabetes Mellitus.

163. The representations made by Defendants were, in fact, false.

164. Defendants failed to exercise ordinary care in the representation of Actos, while involved in its manufacture, sale, testing, quality assurance, quality control, and/or distribution of said product into interstate commerce in that Defendants negligently misrepresented Actos's high risk of unreasonable, dangerous side effects.

165. Defendants breached their duty in representing Actos's serious side effects to the medical and healthcare community, to the Plaintiffs, the FDA and the public in general.

166.  As a result of the foregoing acts and omissions, the Plaintiffs were caused to suffer serious and dangerous side effects including, bladder cancer, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of redeveloping cancer.

167.  As a result of the foregoing acts and omissions the Plaintiffs require and/or will require more health care and services and did incur medical, health, incidental and related expenses.  Plaintiffs are informed and believe and further alleges that Plaintiffs will in the future be required to obtain further medical and/or hospital care, attention, and services.

168.  By reason of the foregoing, each Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

**EIGHTH CAUSE OF ACTION AS**
**AGAINST THE DEFENDANTS**
**(FRAUD AND DECEIT)**

169.  Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

170.  Defendants conducted research and used Actos as part of their research.

171.  As a result of Defendants' research and testing, or lack thereof, Defendants blatantly and intentionally distributed false information, including but not limited to assuring the public, the Plaintiffs, Plaintiffs' doctors, hospitals, healthcare professionals, and/or the FDA that Actos was safe and effective for use as a means of treating Type 2 Diabetes Mellitus.

172.  As a result of Defendants' research and testing, or lack thereof, Defendants intentionally omitted certain results of testing and research to the public, healthcare professionals, and/or the FDA, including the Plaintiffs.

173.  Defendants had a duty when disseminating information to the public to disseminate truthful information and a parallel duty not to deceive the public and the Plaintiffs, as well as Plaintiffs' respective healthcare providers and/or the FDA.

174.  The information distributed to the public, the FDA, and the Plaintiffs by Defendants, including but not limited to reports, press releases, advertising campaigns, television commercials, print ads, magazine ads, billboards, and all other commercial media contained material representations of fact and/or omissions.

175.  The information distributed to the public, the FDA, and the Plaintiffs by Defendants intentionally included representations that Defendants' drug Actos was safe and effective for use as a treatment of Type 2 Diabetes Mellitus.

176.  The information distributed to the public, the FDA, and the Plaintiffs, by Defendants intentionally included representations that Defendants' drug Actos carried the same risks, hazards, and/or dangers as other forms of Type 2 Diabetes Mellitus treatment.

177.  The information distributed to the public, the FDA, and the Plaintiffs, by Defendants intentionally included false representations that Actos was not injurious to the health and/or safety of its intended users.

178.  The information distributed to the public, the FDA, and the Plaintiffs, by Defendants intentionally included false representations that Actos was as potentially injurious to the health and/or safety of its intended as other forms of Type 2 Diabetes Mellitus treatment.

179.  These representations were all false and misleading.

180.  Upon information and belief, Defendants intentionally suppressed, ignored and disregarded test results not favorable to the Defendants, and results that demonstrated that Actos was not safe as a means of Type 2 Diabetes Mellitus treatment and/or was not as safe as other means of Type 2 Diabetes Mellitus treatment.

181. Defendants intentionally made material representations to the FDA and the public, including the medical profession, and the Plaintiffs, regarding the safety of Actos, specifically but not limited to Actos not having dangerous and serious health and/or safety concerns.

182. Defendants intentionally made material representations to the FDA and the public in general, including the medical profession, and the Plaintiff, regarding the safety of Actos, specifically but not limited to Actos being as safe a means of treating Type 2 Diabetes Mellitus.

183. That it was the purpose of Defendants in making these representations to deceive and defraud the public, the FDA, and/or the Plaintiffs, to gain the confidence of the public, healthcare professionals, the FDA, and/or the Plaintiffs, to falsely ensure the quality and fitness for use of Actos and induce the public, and/or the Plaintiffs to purchase, request, dispense, prescribe, recommend, and/or continue to use Actos.

184. Defendants made the aforementioned false claims and false representations with the intent of convincing the public, healthcare professionals, the FDA, and/or the Plaintiffs that Actos was fit and safe for use as treatment for Type 2 Diabetes Mellitus.

185. Defendants made the aforementioned false claims and false representations with the intent of convincing the public, healthcare professionals, the FDA, and/or the Plaintiffs that Actos was fit and safe for use as Type 2 Diabetes Mellitus treatment and did not pose risks, dangers, or hazards above and beyond those identified and/or associated with other forms of Type 2 Diabetes Mellitus treatment.

186. That Defendants made claims and representations in its documents submitted to the FDA, to the public, to healthcare professionals, and the Plaintiffs that Actos did not present serious health and/or safety risks.

187. That Defendants made claims and representations in its documents submitted to the FDA, to the public, to healthcare professionals, and the Plaintiffs that Actos did not present health and/or safety risks greater than other oral forms of Type 2 Diabetes Mellitus treatment.

188. That these representations and others made Defendants were false when made, and/or were made with a pretense of actual knowledge when knowledge did not actually exist, and/or were made recklessly and without regard to the actual facts.

189. That these representations and others, made by Defendants, were made with the intention of deceiving and defrauding the Plaintiffs, including respective healthcare professionals and/or the FDA, and were made in order to induce the Plaintiffs and/or their respective healthcare professionals to rely upon misrepresentations and caused the Plaintiffs to purchase, use, rely on, request, dispense, recommend, and/or prescribe Actos.

190. That Defendants, recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of Actos to the public at large, the Plaintiffs in particular, for the purpose of influencing the marketing of a product known to be dangerous and defective and/or not as safe as other alternatives, including other forms of Type 2 Diabetes Mellitus treatment.

191. That Defendants willfully and intentionally failed to disclose the material facts regarding the dangerous and serious safety concerns of Actos by concealing and suppressing material facts regarding the dangerous and serious health and/or safety concerns of Actos.

192. That Defendants willfully and intentionally failed to disclose the truth, failed to disclose material facts and made false representations with the purpose and design of deceiving and lulling the Plaintiffs, as well as their respective healthcare professionals into a sense of security so that Plaintiffs would rely on the representations and purchase, use and rely on Actos and/or that Plaintiffs' respective healthcare providers would dispense, prescribe, and/or recommend the same.

193. Defendants, through their public relations efforts, which included but were not limited to the public statements and press releases, knew or should have known that the public, including the Plaintiffs, as well as Plaintiffs' respective healthcare professionals  would rely upon the information being disseminated.

194. Defendants utilized direct to consumer adverting to market, promote, and/or advertise Actos.

195. That the Plaintiffs and/or respective healthcare professionals did in fact rely on and believe the Defendants' representations to be true at the time they were made and relied upon the representations as well as the superior knowledge of Type 2 Diabetes Mellitus treatment and were thereby induced to purchase, use and rely on Defendants' drug Actos.

196. That at the time the representations were made, the Plaintiffs and/or their respective healthcare providers did not know the truth with regard to the dangerous and serious health and/or safety concerns of Actos.

197. That the Plaintiffs did not discover the true facts with respect to the dangerous and serious health and/or safety concerns, and the false representations of Defendants, nor could the Plaintiffs with reasonable diligence have discovered the true facts.

198. That had the Plaintiffs known the true facts with respect to the dangerous and serious health and/or safety concerns of Actos, Plaintiffs would not have purchased, used and/or relied on Defendants' drug Actos.

199. That the Defendants' aforementioned conduct constitutes fraud and deceit, and was committed and/or perpetrated willfully, wantonly and/or purposefully on the Plaintiffs.

200. As a result of the foregoing acts and omissions, the Plaintiffs was caused to suffer serious and dangerous side effects including, bladder cancer, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of redeveloping cancer.

201. As a result of the foregoing acts and omissions the Plaintiffs requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiffs is

informed and believes and further alleges that Plaintiffs will in the future be required to obtain further medical and/or hospital care, attention, and services.

202. By reason of the foregoing, each Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## NINTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS (LOSS OF CONSORTIUM)

203. Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

204. As a direct and proximate result of the foregoing, Plaintiffs were deprived of the comfort and enjoyment of the services and society of their spouses. Plaintiffs have suffered and will continue to suffer economic loss, and has otherwise been emotionally and economically injured. The Plaintiffs injuries and damages are permanent and will continue into the future. The Plaintiffs seek actual and punitive damages from the Defendants as alleged herein.

205. By reason of the foregoing, each Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## TENTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS (WRONGFUL DEATH)

206. Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

207. As a direct and proximate result of the foregoing, Plaintiff-decedents died of bladder cancer, which was proximately caused by the Actos that Defendants designed, researched, manufactured, tested,

advertised, promoted, marketed, sold, distributed, and or have acquired the Defendants who have designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed.

208.  Plaintiff-decedents left heirs, next-of-kin and/or distributees surviving who, by reason of the Plaintiff-decedent's death have suffered a pecuinary loss, including, but not limited to, support, income, services and guidance of the Plaintiff-decedents and were all permanently damaged thereby.

209.  At all times herein mentioned, the actions of the named Defendants and their agents, servants, and/or employees were wanton, grossly negligent, reckless and demonstrated a complete disregard and reckless indifference to the safety and welfare of the general public and to the Plaintiff-decedents in particular.

210.  By reason of the foregoing, each Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against the Defendants on each of the above-referenced claims and Causes of Action and as follows:

1.     Awarding compensatory damages to Plaintiffs for past and future damages, including but not limited to pain and suffering for severe and permanent personal injuries sustained by the Plaintiff, health care costs, medical monitoring, together with interest and costs as provided by law;

2.     Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the Plaintiffs in an amount sufficient to punish Defendants and deter future similar conduct;

3.     Awarding Plaintiffs reasonable attorneys' fees;

4.     Awarding Plaintiffs the costs of these proceedings; and

5.     Such other and further relief as this Court deems just and proper.


Dated: New York, New York
       September 3, 2014


                    **DOUGLAS & LONDON, P.C.**


                    By: ____/s/ Michael A. London___
                    MICHAEL A. LONDON (ML-7510)
                    STEPHANIE O'CONNOR
                    59 Maiden Lane, 6th Floor
                    New York, New York 10038
                    Ph:  (212) 566-7500
                    Fax: (212) 566-7501
                    Email: MLondon@DouglasAndLondon.com
                           SOConnor@DouglasAndLondon.com
                    Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury as to all issues.


By:  ___/s/ Michael A. London___
MICHAEL A. LONDON (ML-7510)
STEPHANIE O'CONNOR